## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| IN RE: | CHAPTER 7 |
| **JO ANNE CARLSON** | CASE NO. 12-43900 |
| DEBTOR. | HON. DONALD R. CASSLING |
| | HEARING DATE:  JAN.11, 2013 |
| | HEARING TIME:   9:30 A.M. |

### NOTICE OF MOTION

**PLEASE TAKE NOTICE** that on **January 11, 2013,** at **9:30 a.m.,** or as soon thereafter as counsel may be heard, the undersigned shall appear before the Honorable **Donald R. Cassling**, or any judge sitting in his stead in Courtroom 4016 of the DuPage County Courthouse, 505 N. County Farm Road, Wheaton, Illinois, and then and there present the **Debtor's Motion for Sanctions Against William Messner for Violation of the Automatic Stay and to Waive Local Rule 5005-3(D)**, a copy of which is attached hereto and hereby served upon you.

Dated:  January 4, 2013

Respectfully submitted,
**Jo Anne Carlson**

By: /s/ David P. Holtkamp
One of Her Attorneys

William J. Factor (6205675)
Sara E. Lorber (6229740)
David P. Holtkamp (6298815)
**THE LAW OFFICE OF**
  **WILLIAM J. FACTOR, LTD.**
105 W. Madison Street, Suite 1500
Chicago, IL 60602
Tel: (847) 239-7248
Fax: (847) 574-8233
Email:  wfactor@wfactorlaw.com
   slorber@wfactorlaw.com
   dholtkamp@wfactorlaw.com

## CERTIFICATE OF SERVICE

I, David Holtkamp, an attorney, thereby certify that, on January 4, 2013, pursuant to Section II, B, 4 of the Administrative Procedures for the CM/ECF System and Fed.R.Civ.P. 5(a), I caused copies of the foregoing Notice of Motion and accompanying Motion to be served electronically through the Court's Electronic Notice persons identified as Registrants on the attached Service List, and via U.S. Mail upon those identified on the attached Service List as non-Registrants.

/s/ David Holtkamp

## SERVICE LIST

**<u>REGISTRANTS</u>**
Service via ECF

- David R Brown dbrown@springerbrown.com, dbrown@ecf.epiqsystems.com;jill@springerbrown.com
- Meredith S Fox mfox@springerbrown.com
- David Paul Holtkamp dholtkamp@wfactorlaw.com, nb@wfactorlaw.com
- Patrick S Layng USTPRegion11.ES.ECF@usdoj.gov

**<u>Non-REGISTRANTS</u>**
Service via U.S. Mail

Jo Anne Carlson
628 South Berkley Ave.
Elmhurst, IL 60126

William Messner
536 Beloit Ave, Rear
Forest Park, IL 60130

# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| IN RE:| CHAPTER 7 |
| **JO ANNE CARLSON** | CASE NO. 12-43900 |
| DEBTOR. | HON. DONALD R. CASSLING |
| | HEARING DATE: JAN. 11, 2013 |
| | HEARING TIME: 9:30 A.M. |

## DEBTOR'S MOTION FOR SANCTIONS AGAINST WILLIAM MESSNER FOR VIOLATION OF THE AUTOMATIC STAY AND TO WAIVE LOCAL RULE 5005-3(D)

Jo Anne Carlson (the "***Debtor***") respectfully requests that this Court enter an order substantially in the form submitted herewith, sanctioning William Messner ("***Messner***") pursuant to §§ 105 and 362(k) of the Bankruptcy Code and Bankruptcy Rules 9020 and 9014 for willfully violating the automatic stay, and in support of such relief states as follows:

### JURISDICTION AND VENUE.

1.     This Court has jurisdiction to hear this matter and enter a final order granting the requested relief herein pursuant to 28 U.S.C. §§ 157 and 1334 and Internal Operating Procedure 15(a) of the United States District Court for the Northern District of Illinois.

2.     Venue is proper in the Northern District of Illinois pursuant to 28 U.S.C. §§ 1408 and 1409.

### REQUEST TO WAIVE LOCAL RULE 5005-3(D)

3.     The Northern District of Illinois Bankruptcy Court Local Rule 5005-3(D) limits motions to fifteen (15) pages unless allowed by the Court.  Local Rule 5005-3(D).  Due the history and unique circumstances as provided in more detail below, the Debtor request that this Court waive the fifteen (15) page limit and allow this Motion in its entirety.

## INTRODUCTION

4.      The Debtor was forced to file this Motion to stop Messner from continuing the campaign of harassment that drove the Debtor to file for bankruptcy relief in the first instance. Notwithstanding the automatic stay, Messner has continued to pursue his alleged claims against the Debtor and other members of her family, alleging a conspiracy story involving a corrupt politician (the Mayor of Forest Park), a "criminal" federal district judge (Judge Kendall), a malicious landlord (the Debtor), and Messner, the helpless victim at the center of it all.  The only problem is that Messner's allegations have no basis in reality and the automatic stay is expressly designed to put an end to such forms of harassment.  And to the extent it matters for present purposes, the facts plainly demonstrate that Messner is the victimizer, and not the victim.

5.      Since at least 2007, Messner has continuously harassed the Debtor and other parties through abuse of process and frivolous lawsuits taking his story before any judge that he believes has jurisdiction.  The Debtor has now been forced to file for bankruptcy, in large part, to put this issue to bed at last.  The Debtor's bankruptcy filing, however, was of no consequence to Messner, as he has willfully violated the automatic stay no less than five (5) times in his endless pursuit of his outlandish claims.

6.      The facts leading up to this Motion, pre and post-petition, show that not only are compensatory damages, or actual damages warranted, punitive damages must be awarded under § 362(k) to stop Messner from continuing on this path of nonstop harassment.

## FACTS AND BACKGROUND

**I.    Messner's Prepetition Harassment, Suits, and other Actions Taken Against the Debtor.**

7.      On or about September 26, 2000, the Debtor's parents, Lynn and Maria Arbeen (the "***Arbeens***"), husband and wife, purchased a property commonly known as 536 Beloit, Ave.,

Forest Park, Illinois (the "***Property***").  Two single family homes are built on the property: one on the front portion of the Property, and the other on the rear portion of the Property.

8.      On or about February 28, 2005, the Arbeens entered into a lease agreement with Messner to rent Messner the rear house for a term of five years to commence on March 1, 2005, and end on February 28, 2010.  The lease agreement provided that at the end of 5 years, the parties agreed "to negotiate a new lease for 3 additional years."  The Lease went on to state in paragraph 12 that Messner had to comply with all Village ordinances, which include ordinances governing the operation of a business within a residence.

9.      On or about May 4, 2006, Lynn Arbeen created the Lynn Andrew Arbeen Trust, dated May 4, 2006 (the "***Trust***").  By the time the Trust was created Maria Arbeen had passed away, and Lynn Arbeen had three living children, Mark Arbeen, Kurt Arbeen[1], and the Debtor. Lynn Arbeen was to remain trustee of the Trust during his life, unless incapacitated, in which case Mark was to be the Trustee.

10.      On or about June 14, 2006, Lynn Arbeen transferred the Property into the Trust. On or about April 4, 2007, Mark took over as trustee of the Trust.

11.      Lynn Arbeen passed away in 2007. Under the Trust, the Property was to be transferred to the Debtor "as soon as possible."  The Property remains in the Trust and was never transferred to the Debtor.  As explained in greater detail below, the Debtor did not want to own the Property out of concern that by doing so she would be directly in the line of Messner's fire and would be targeted for further suit by him. Indeed, the Debtor was so troubled by Messner that she elected not to even occupy the house and was thus forced to rent an apartment to live with her three (3) children.

---

[1] It appears that the Trust provided for Kurt Arbeen and his children to receive nothing out of the Trust.

12.     Since the inception of Messner's lease, he has operated his business, a recording studio, out of the leased premises.  Messner received a license to operate a home business out of the Property from April 2005 to February 2006.  *See Messner v. Calderone*, 407 Fed. Appx. 972, 973 (7th Cir. 2011).   In that time, the Village received two complaints about Messner's recording studio, so the Village clerk required inspection before issuing a new one year license.  *Id.*  "Messner repeatedly refused to cooperate, and before he applied for a renewal that April [of 2006], he was warned that his application would be denied if he did not relent."  *Id.*  "He still refused to allow an inspection, so the clerk rejected his application." *Id.*

13.     It appears to be Messner's whole hearted belief that the Village's refusal to issue the license without inspection must have involved corrupt Village officials conspiring with the Debtor and Arbeen, and later a federal district judge, all in a plan to financially crush him.  In pursuit of this belief, Messner began his crusade against anyone and everyone that could possibly have been involved.

14.     On or about February 15, 2007, Messner filed a complaint against Forest Park and Village officials, including its mayor and city manager asserting that they had unconstitutionally refused to issue him a business license.  The case was assigned to Judge Kendall in the Northern District of Illinois, Case No. 07-cv-893.  This case resulted in seven (7) written opinions, none flattering to Messner.[2]  The case culminated in two motions by Messner asserting that Judge

---

[2] *See Messner v. Calderone*, 2007 U.S. Dist. LEXIS 45688 (N.D. Ill. June 25, 2007)(granting defendants' motion to dismiss); *Messner v. Calderone*, 2008 U.S. Dist. LEXIS 19614 (N.D. Ill. Mar. 13, 2008)(granting defendants' motion to dismiss Messner's first amended complaint as to certain counts); *Messner v. Calderone*, 2009 U.S. Dist. LEXIS 87085 (N.D. Ill. Sept. 23, 2009)(granting defendants motion for summary judgment in its entirety and denying Messner's motion for summary judgment in its entirety); *Messner v. Calderone*, 2011 U.S. Dist. LEXIS 44564 (N.D. Ill. Apr. 26, 2011)(denying Messner's motion for reconsideration and motion to recuse);  *Messner v. Calderone*, 407 Fed. Appx. 972, 973 (7th Cir. 2011)(affirming the district court's denial of Messner's motion for reconsideration under Rule 59 and his motion for

- 4 -

Kendall must recuse herself, accusing the judge throughout the motions as being guilty of all sorts of unscrupulous acts, including criminal and intentional disregard for the constitution, lying to Messner, and quid quo pros with the defendants' attorneys. *See* Amended Motion for Recusal, attached hereto as **Exhibit A**. The motions painted Judge Kendall is such poor light that it is amazing that she was able to muster such a measured response.[3]

15.    The Seventh Circuit was given more than one occasion to hear out Messner's claims. Actually it appears they heard Messner's story three (3) times.[4] Messner, on his second trip to the Seventh Circuit was told that his continued attempts to prolong the "suit that has been resolved on appeal [are] frivolous, and he risks financial sanctions if he continues to refuse to accept defeat." *Messner v. Calderone*, 447 Fed. Appx. at 725. It went on to state Messner's contentions that Judge Kendall should have recused herself were also "frivolous." *Id.* The Seventh Circuit's warnings were of no avail, Messner filed a motion with the appeals court for a rehearing of his frivolous claims *en banc*, which was denied. *Messner v. Calderone*, 2011 U.S. App. LEXIS 20692.

16.    On October 26, 2007, Messner took his conspiracy theory to the Circuit Court of Cook County, Law Division, Case No. 2007-L-06415, filing a complaint against Mark Arbeen, the Trust, and the Debtor again asserting that they had helped perpetrate the conspiracy with the Village officials to refuse to issue the business license and defraud him of his livelihood and

---

leave to file an amended complaint); *Messner v. Calderone*, 447 Fed. Appx. 725 (7th Cir. 2011)(affirming the district court's denial of Messner's motion to reconsider under Rule 60 and for recusal of judge); *Messner v. Calderone*, 2011 U.S. App. LEXIS 20692 (7th Cir. Ill. Oct. 5, 2011)(denying rehearing).

[3] Both motions were simply denied. *See Messner v. Calderone*, 2011 U.S. Dist. LEXIS 44564.

[4] *Messner*, 407 Fed. Appx. 972; *Messner*, 447 Fed. Appx. 725; *Messner v. Calderone*, 2011 U.S. App. LEXIS 20692 (7th Cir., Oct. 5, 2011).

place to live. This case ended with dismissal of several counts with prejudice and a few without

prejudice.  Messner never filed an amended complaint.

17.     In the meantime, in or about June of 2008, the Debtor moved from the house on

the front portion of the Property to DuPage County in an attempt to get away from Messner's

harassment.  Messner, not wanting to miss an opportunity to continue to victimize the Debtor

through frivolous lawsuits and abuse of process, filed a complaint against the Debtor and others

in the Eighteenth Judicial Circuit in DuPage County, Case No. 2012-L-73 (the "*DuPage Suit*")

again asserting the same fantastic conspiracy theory.  Messner's Amended Complaint is attached

hereto as **Exhibit B**.

18.     During the time period between 2007 and 2012, Mark Arbeen, acting on behalf of

the Trust, attempted on three occasions to dissolve the relationship with Messner by taking back

possession of the Property.[5]  Arbeen has been unsuccessful in each of these attempts, for the

most part due to the enormous litigation costs associated with prosecuting a suit against Messner,

a person – as the Seventh Circuit noted – that is unwilling to accept defeat and will continually

file frivolous motions to prolong a suit.  *See Messner v. Calderone*, 447 Fed. Appx. at 725.

## II.     The Bankruptcy Filing And Notice Thereof.

19.     The Debtor filed a petition under chapter 7 of title 11 of the United States Code,

11 U.S.C. § 101, *et seq.*  (the "*Bankruptcy Code*"), on November 5, 2012 (the "*Petition Date*"),

thereby initiating this bankruptcy case (the "*Case*"). The Debtor filed for bankruptcy relief in the

hope that doing so would, once and for all, put an end to Messner's suits against her and allow

her to live in peace.

20.     Messner was listed on the creditor matrix and was provided U.S. Mail notice of

---

[5] *Arbeen v. Messner*, 2007-CH-527, *Arbeen v. Messner*, 2007-M4-000977, and *Arbeen v. Messner*, 2010-M4-01758.

the commencement of the Case on November 8, 2012. *See* Notice of Meeting of Creditors and

Certificate of Notice of Meeting of Creditors (the "***Notice***") at p. 3 [Dkt. No. 9].

21.     The Notice provides that "[p]rohibited collection action are listed in Bankruptcy

Code § 362. Common examples of prohibited actions include contacting the debtor by

telephone, mail or otherwise … starting or continuing lawsuits ..." *Id.* at p. 2.

22.     On the Petition Date, one of the Debtor's attorneys sent a letter to Messner

advising him of the bankruptcy filing and expressly stating that the DuPage Suit must be

suspended with respect to the Debtor. *See* Letter to Messner, dated November 5, 2012, attached

hereto as **Exhibit C**.

23.     The meeting of creditors was held on November 29, 2012 [Dkt. No. 8]. Trustee

David Brown presided over the 341 meeting. Messner appeared at the meeting of creditors

24.     In advance of the meeting of creditors, Messner sent Trustee Brown a packet of

information that he claims will show that the Debtor filed bankruptcy fraudulently. *See* Letter to

Trustee Brown dated November 13, 2012, attached hereto as **Exhibit D.**

### III.     Messner's Repeated Violations of the Automatic Stay Under § 362 of the Bankruptcy Code.

25.     Messner admits that he had notice of the bankruptcy filing and he was even

warned against proceeding against the Debtor while the bankruptcy case was pending. In

defiance of that warning and the clear notice he had, Messner violated that stay no less than five

(5) times by attempting to continue to prosecute the DuPage Suit against the Debtor and by

contacting the Debtor in an attempt to further his collection efforts on the DuPage Suit.

26.     First, on November 22, 2012, Messner filed his Reply to the Debtor's Non-

Response[6] (the "***Reply***") in the DuPage Suit, notwithstanding the bankruptcy filing and having ample notice thereof.  *See* Reply, attached hereto as **Exhibit E**.  Messner filed the Reply as a "Reply to the [Debtor's] failure to respond to Messner's Motion to Reconsider the court's opinion and order of July 5, 2012."  Reply at p. 1.  In the Reply, Messner admits that he was aware of the bankruptcy filing and had received the letter from the Debtor's attorney regarding the bankruptcy filing.  *See* Reply at p. 1 ("Mr. Ciesla's [attorney for the Debtor] only notice was to threaten Messner by letter, dated November 5, 2012: 'Any efforts to further prosecute this matter during the pendency of the bankruptcy matter will be reported to the bankruptcy court.'").  The essential argument of the Reply is that the DuPage Suit should proceed because Messner's claim would be non-dischargeable in bankruptcy. *See generally* Reply.

27.    Second, on December 3, 2012, again in violation of the automatic stay, Messner sent to the Debtor a demand letter stating that if she "[r]effuse, [the demands therein, Messner] will seize every penny …"  Letter to Jo Carlson, dated December 3, 2012, at p. 2, attached hereto as **Exhibit F**; Declaration of Jo Carlson, at ¶ 6, attached hereto as **Exhibit G**.

28.    The December 3rd letter was sent to the Debtor via the United States Postal Service at her job.  Declaration of Jo Carlson at ¶ 6.  There was nothing on the envelope stating that the contents were personal or confidential and therefore the envelope could have been opened by any one of the Debtor's co-workers.  *Id.*

29.    Third, two days after sending the letter, on December 5, 2012, Messner appeared before the Circuit Court in the DuPage Suit on Messner's motion to reconsider and proceed with discovery. *See* Transcript to December 5th Hearing (the "***Transcript***"), attached hereto as **Exhibit H**.

---

[6] The document is entitled: "Plaintiff's Reply to Defendant Carlon's Non-Response to Plaintiff's Amended Motion for Reconsideration and Vacate its Order of July 5, 2012."

30.    At the December 5th hearing, counsel for the Debtor immediately brought the bankruptcy filing to the court's attention. *Id* at p. 3. Notwithstanding the clear invocation of the automatic stay by the Debtor's counsel, Messner again violated the automatic stay by attempting to persuade the DuPage Court that the stay did not apply and that the DuPage Suit could continue.[7] *Id* at p. 4-5.

31.    Fourth, on December 11, 2012, Messner called the Debtor at her job. Declaration of Jo Carlson, at ¶ 10. One of the Debtor's co-workers answered Messner's call and took down his information for the Debtor to call Messner back. *Id.* The Debtor immediately set out to inform her bankruptcy counsel of this violation, but inadvertently dialed the number that was given to her on a post-it by her co-worker. *Id.* Messner answered the Debtor's call. *Id.* The Debtor, realizing the mistake, immediately ended the call and called bankruptcy counsel. *Id.*

32.    Finally, on Wednesday, December 12, 2012, Messner appeared at the Debtor's place of work and demanded to talk with the Debtor regarding the DuPage suit and his claims against her. *Id* at ¶ 12. One the Debtor's co-workers was forced to ask Messner to leave, but not before Messner shouted for the Debtor to call him. *Id*.

33.    Messner's continuous and violative behavior has gone unabated since the Petition Date. Messner had notice of the bankruptcy, his actions were intentional, they violated the

---

[7] The pertinent part of the Transcript reads:

> THE COURT: -- and you are asking to vacate the order of July 5th, even though they are in bankruptcy?

> MR. MESSNER: Yes. Even if the Court proceeds with the bankruptcy, which I am 99 percent positive they will not. But even if they do, the Court can still proceed to a decision on this matter. Whether or not it is executable against them will be for the Court to decide. But there is nothing that can -- that needs to stop the proceedings.

Transcript at p. 4-5.

automatic stay, and his past behavior shows that he has no intention of relenting.  In such a case,

not only actual and compensatory damages are warranted, but also punitive damages to ensure

that Messner does not continue to violate the stay on his never ending quest to victimize the

Debtor.

## BASIS FOR RELIEF.

**I.  This Court Must Award the Debtor Sanctions Against Messner for Actual Damages, Including Attorney's Fees Associated with Enforcing the Stay Provisions, and Punitive Damages are Warranted.**

34.     The Court is provided two sources of authority to sanction willful violations of

the automatic stay.  The Court has the inherent authority to hold the party violating the stay in

contempt of court.  The Court also has express statutory authority under § 362(k) of the

Bankruptcy Code to sanction willful violations of the stay.  The difference, however, is that

"damages pursuant to § 362(k) are considered mandatory, while damages pursuant to contempt

or inherent powers are considered discretionary." *Johnson v. RJM Acquisitions*, LLC, 2012 U.S.

Dist. LEXIS 36407, 29-30 (S.D. Ill. Mar. 19, 2012)(internal citations omitted).  Section 362

provides in pertinent part:

> an individual injured by any willful violation of a stay provided by this
> section shall recover actual damages, including costs and attorneys' fees,
> and, in appropriate circumstances, may recover punitive damages.

11 U.S.C. § 362(k)(1).

35.     Thus, a debtor seeking to recover damages under § 362(k) must show that: "(1)

the conduct at issue constituted a violation of the automatic stay; (2) the violation was willful;

and (3) the debtor was injured as a result of the violation." *In re Gallo*, 2012 Bankr. LEXIS 4209

(Bankr. M.D.N.C. Sept. 10, 2012); *Hamrick v. United States (In re Hamricfk)*, 175 B.R. 890, 893

(W.D.N.C. 1994); *Foreston Coal Int'l, Inc. v. Red Ash Coal & Coke Corp. (In re Red Ash Coal*

*& Coke Corp.*), 83 B.R. 399, 403 (W.D. Va. 1988); *see also In re Rose*, 2012 Bankr. LEXIS

4640, *6 (Bankr. N.D. Ill. Oct. 2, 2012)(using a similar test).

### A. Messner has Violated § 362(a)(1) of The Bankruptcy Code by Attempting to Proceed with the DuPage Suit Against the Debtor.

36.     Congress intended § 362 of the Bankruptcy Code to provide broad relief to the

Debtor to stay nearly all actions against the Debtor to collect on any claim that arose prepetition.

*See* H.R. Rep. No. 595 (1977); S. Rep. No. 989 (1978)("The scope of this paragraph is broad").

Section "362(a)[(1)] is clear: the provision operates to stay the continuation of all judicial

proceedings." *In re Hall-Walker*, 445 B.R. 873, 876 (Bankr. N.D. Ill. 2011).

37.     Section 362(a)(1) expressly provides that the automatic stay:

> operates as a stay, applicable to all entities, of the commencement or
> continuation, including the issuance or employment of process, of a
> judicial, administrative, or other action or proceeding against the debtor
> that was or could have been commenced before the commencement of
> the case under [the Bankruptcy Code], or to recover a claim against the
> debtor that arose before the commencement of the case under [the
> Bankruptcy Code].

11 U.S.C. § 362(a)(1).

38.     Thus, as § 362 operates to stay all prepetition actions against a debtor.  A creditor

prosecuting a claim against a debtor in a non-bankruptcy forum has the affirmative duty to

dismiss or stay the proceeding once the creditor has notice of the bankruptcy filing.  *Sternberg v.

Johnston*, 595 F.3d 937, 943 (9th Cir. 2009)(holding that "the automatic stay imposes on non-

debtor parties an affirmative duty of compliance"); *Will v. Ford Motor Credit Co. (In re Will)*,

303 B.R. 357, 364 (Bankr. N.D. Ill. 2003)(a "creditor has an affirmative duty to remedy an

automatic stay violation without court order"). Attempting to continue to prosecute a case against

the debtor, or even seeking a continuance (instead of a stay or dismissal), is in violation of the

- 11 -

stay.  *See In re Hall-Walker*, 445 B.R. 873, 876

39.    Messner attempted on two occasions to continue to prosecute the DuPage Suit

while knowing of the bankruptcy filing and being specifically warned about the stay's effect on

the DuPage Suit. He first filed the Reply in the DuPage Suit on November 22, 2012, and then

argued against staying the proceeding at the hearing held on December 5th.  *See* Transcript at p.

4-5.  At the December 5th hearing it was only the argument by the Debtor's attorney that

convinced the judge presiding over the DuPage Suit to stay the proceeding with respect to the

Debtor.  *Id.* As the DuPage Suit was commenced prior to commencement of this bankruptcy

case, Messner's actions violated § 362(a)(1).

### B.    Messner Has Violated § 362(a)(6) of the Bankruptcy Code by Contacting the Debtor by Letter, by Phone and In Person Regarding the DuPage Suit and Its Underlying Claim.

40.    Section 362(a)(6) is even more expansive than § 362(a)(1) as it "prevents

creditors from attempting in any way to collect a prepetition debt."  H.R. Rep. No. 595, at 342

(1977); S. Rep. No. 989, at 50-51 (1978).  Congress specifically envisioned the scenario present

in this case in enacting § 362(a)(6), stating "[c]reditors in consumer cases occasionally telephone

debtors to encourage repayment in spite of bankruptcy.  Inexperienced, frightened, or ill-

counseled debtors may succumb to suggestions to repay notwithstanding bankruptcy."  *Id.*  The

automatic stay "stops all collections efforts, *all harassment*, and all foreclosure actions." *Id*

(emphasis added).

41.    Here, there can be no doubt that Messner's December 3rd letter, phone call to the

Debtor at her job, and personal visit to the Debtor's job were harassment aimed at attempting to

"collect, assess, or recover a claim against the [D]ebtor that arose before the commencement of

the case under [the Bankruptcy Code]." 11 U.S.C. § 362(a)(6).

42.    A "claim" is defined as "a right to payment, whether or not such right is reduced

to judgment, liquidated, unliquidated," *etc.* 11 U.S.C. § 101(5).  Thus, it does not matter that

there is no judgment on Messner's allegations. The fact that he asserts that he has a right to

payment from the Debtor is enough to bring that alleged right to payment within the meaning of

"claim" under the Bankruptcy Code.   As Messner's claim arose prior to the commence of this

bankruptcy case, his actions violated § 362(a)(6) of the Bankruptcy Code.

### C.  Messner's Violations of the Automatic Stay Were Willful.

43.    Bankruptcy Courts have recognized the difference between a technical violation

of the automatic stay and a willful violation of the stay, with only the latter requiring sanctions.

*See Crawford v. Credit Acceptance Corp. (In re Crawford)*, 2008 Bankr. LEXIS 3531, *5-6

(Bankr. S.D. Ill. Dec. 24, 2008)(acknowledging the two types of violations).  The difference

between the two types of violations rests in whether the violator had notice of the bankruptcy

filing.  *Id.*  A technical violation happens when the creditor did not have notice of the filing, but

still technically violated the stay through some action against the debtor.  *Id.*  A willful violation

happens when "a creditor engages in conduct that violates the automatic stay, with knowledge

that a bankruptcy petition had been filed." *In re Crome*, 2008 Bankr. LEXIS 3854 (Bankr. N.D.

Ill. Dec. 23, 2008).  It is irrelevant whether the creditor knew of the stay, as "[k]nowledge of the

bankruptcy filing is the legal equivalent of knowledge of the automatic stay."  *Crawford* 2008

Bankr. LEXIS 3531, *5-6.

44.    "[A] 'willful' violation does not require a finding of specific intent of the creditor

to violate the automatic stay, but the Court must find that the creditor acted intentionally." *In re

Rose,* 2012 Bankr. LEXIS 4640, citing *Price v. United States (In re Price)*, 42 F.3d 1068, 1071

(7th Cir. 1994); *In re Betts*, 165 B.R. 233, 242 (Bankr. N.D. Ill. 1994).  In other words, to

"prevail, the Debtor must show that the respondents took actions that violated the automatic stay

while they knew that the automatic stay was in effect." *In re Betts*, 165 B.R. at 242. "The Debtor

- 13 -

does not have to prove that the respondents had specific intentions to violate the stay." *Id.* "A violation of the automatic stay is willful even if the respondents believed themselves justified in taking the actions found to be violative of the stay." *Id.* Thus, only the act must be intentional, not the consequence.

45.     Here, Messner attempted to continue to prosecute the DuPage Suit on two occasions, by filing the Reply and at the December 5th hearing.  Although Messner may have believed that his actions were justified, such belief is immaterial.  He acted intentionally in a way that violated the stay and with knowledge of the bankruptcy filing. Messner, therefore, willfully violated the automatic stay and because he did so the Court has not discretion on whether to order damages.  It must do so.

46.     Messner also intentionally sent the Debtor a letter of December 3rd telling the Debtor that if she did not comply with the demands of the letter that he would "take every penny."  He then called the Debtor on December 11, 2012 and visited her at her job on December 12, 2012. These were both intentional acts that constitute stay violations, after Messner had knowledge of the stay.  Again, as such the Court must order damages.

### D. Actual Damages, Including Attorneys' Fees are Mandatory Under § 362(k)(1).

47.     Section 362(k) states that a debtor "injured by any willful violation of the stay … shall recover actual damages, including costs and attorneys' fees" associated with enforcing the stay.  11 U.S.C. § 362(k).  Thus, when there is a willful violation, the court has no discretion as to whether to award actual damages and attorney's fees.

48.     In the instant case, the Debtor has sustained "actual damages, including attorney's fees", (a) for the time that the Debtor's attorney representing her in the DuPage Suit, Michael Ciesla, was required to expend due to Messner's persistence in continuing to prosecute the suit

against the Debtor, and (b) for attorneys' fees incurred in enforcing the automatic stay.

49.    First, Mr. Ciesla expended three (3) hours that he would not have had to expend but for Messner's stay violations.  Affidavit of Michael Ciesla, attached hereto as **Exhibit I**.  Mr. Ciesla's hourly rate is $300.00 and therefore the Debtor is entitled to damages in the amount of $900.00 for the time Ciesla expended defending the Debtor in the DuPage Suit.  *Id.*

50.    Second, "[a]ttorneys' fees incurred in prosecuting an action to obtain full relief under the statute, including any entitlement to actual and punitive damages, is as much a part of the debtor's 'actual damages' as those incurred in stopping the stay violation." 3 Collier on Bankruptcy ¶ 362.12[3].   Thus, the Debtor is entitled to damages in the amount of attorneys' fees expended by bankruptcy counsel in prosecuting this motion.

51.    Congress, in allowing attorney's fees, showed its intent "to encourage attorneys to bring enforcement actions and to 'promote citizen enforcement of important federal policies.'" *Id.*  "This 'private attorney general' purpose of section 362(k)(1) is undermined if debtors in bankruptcy, having significant constraints on their ability to pay for legal representation, are not able to recover attorneys' fees for their entire representation in a stay enforcement proceeding." In essence, if bankruptcy courts deny attorneys' fees associated with bringing a motion under § 362(k) there would be little to no incentive to do so, as most chapter 7 attorneys only take a small flat fee.  Or bankruptcy counsel may just refuse to take the case where it is foreseeable that at § 362(k) motion may be required, for which they will never be paid.  It is overly apparent that Congress provided for attorneys' fees for prosecuting a motion under § 362(k).[8]

---

[8] As this motion is made under both § 362(k) and the Court's inherent power to sanction parties for civil contempt for violations of the stay, Local Rule 9020-1 applies, which specifically provides that "reasonable counsel fee, necessitated by the contempt proceeding, may be including as an item of damages."  Local Rule 9020-1(A)(2).  Thus, under both §362(k) and this

52.     Bankruptcy counsel has expended a total of 28.5 hours in prosecuting this §

362(k) motion thus far.  *See* Declaration of David Holtkamp, at ¶¶ 3-4, attached hereto as

**Exhibit J**.  Specifically, attorney David Holtkamp expended 25.6 hours prosecuting this Motion.

*Id* at ¶ 3. His customary billable rate is $250/hr for a total amount of $6,800. *Id.* Attorney

William Factor expended 2.9 hours prosecuting this Motion so far. *Id* at ¶ 4.  His customary

hourly rate is $350/hr for a total amount of $1,015. *Id.* Therefore, damages including attorneys'

fees are $8,715.

53.     Further, attorney's fees for bankruptcy counsel will continue to accrue for as long

as Messner continues with his campaign. The Debtor is equally entitled to those damages yet to

be determined.

### E.  The Debtor is Also Entitled to Emotional Distress as Part and Parcel of Actual Damages Caused by Messner's Willful Violations.

54.     There is an "emerging consensus" holding that debtors that have been the victims

of willful violations of the automatic stay are entitled to emotional distress as part of the actual

damages calculation under § 362(k).  *See* 3 Collier on Bankruptcy ¶ 362.12[3] citing *In re*

*Dawson*, 390 F.3d 1139, 1148 (9th Cir. 2004); *Fleet Mortgage Group, Inc. v. Kaneb*, 196 F.3d

265 (1st Cir. 1999).  In "[r]eading the legislative history as a whole… Congress was concerned

not only with financial loss, but also -- at least in part -- with the emotional and psychological

toll that a violation of a stay can exact from an individual."  *In re Dawson*, 390 F.3d at 1148.

This is also why § 362(k) is only applicable to "individuals" and not other entities under the

Code.  *See Id* at 1146 (stating "[b]y limiting the availability of actual damages under § 362([k])

to individuals, Congress signaled its special interest in redressing harms that are unique to human

beings. One such harm is emotional distress, which can be suffered by individuals but not by

---

Court's inherent power, bankruptcy counsel's fees incurred in prosecuting this Motion are
properly including as actual damages.

organizations.").  Only an individual can feel emotion distress.  "Because Congress meant for the automatic stay to protect more than financial interests, it makes sense to conclude that harm done to those non-financial interests by a violation are cognizable as 'actual damages'." *Id.*

55.    The Seventh Circuit has taken up the issue as to whether "damages awarded for emotional injury caused by a willful violation of the automatic stay are 'actual damages'." *Aiello v. Providian Fin. Corp.*, 239 F.3d 876, 878 (7th Cir. 2001).[9]  The court concluded that "No doubt they are." *Id.*  The Seventh Circuit, however, held the *purely* emotional injury was not within the gambit of redress under § 362(k). *Id* at 881.  The court did recognize that when there was actual financial injury, such as "substantial legal costs on the [debtor]," *id* at 880, the debtor "might be permitted to piggyback a claim for damages for incidental emotional distress." *Id* at 881.

56.    The *Aiello* court certainly did not bar all emotion distress claims under § 362(k), it merely barred claims under § 362(k) where the only damage was emotional distress.  The Circuit cited the Restatement (Second) of Torts, which provides that "[b]ecause of the fear of fictitious or trivial claims, distrust of the proof offered, and the difficulty of setting up any satisfactory boundaries to liability, the law has been slow to afford independent protection to the interest in freedom from emotional distress standing alone."  Restatement (Second) of Torts § 46 comment b, § 436A (1965).  Thus, the Seventh Circuit has adopted a standard for emotional distress under § 362(k) that first requires a separate actual financial injury before emotional distress damages may be tacked on, as was the case in early tort law.  As the only damages alleged in *Aiello* were

---

[9] In *Aiello* the Circuit Court was presented with facts that it used to distinguish cases that had allowed emotional distress injury damages to be awarded under § 362(k).  The plaintiff's in *Aiello* requested class certification for debtors that had been contacted by a certain creditor seeking *purely* emotional injury damages under § 362(k).  The court was loath to allow a class action based on a flimsy affidavit of a debtor and no other evidence of emotional injury, stating that emotional distress is already very hard to quantify. The court concluded that damages under § 362(k) must be for more than merely emotion injury and must allege some other actual financial injury.

- 17 -

emotional distress damages, the court denied relief.

57.     The *Aiello* court also went out of its way to distinguish itself from *Fleet Mortg. Group v. Kaneb*, 196 F.3d 265, 270 (1st Cir. 1999) and did not hold in opposition to that case. In *Fleet Mortgage* the First Circuit held emotion distress could be part of actual damages where there were specific emotional damages shown on top of attorneys' fees associated with enforcing the stay. *Id* at 270.  In that case the creditor initiated a foreclosure action with knowledge of the bankruptcy and refused to dismiss the case for six (6) months.  The debtor incurred attorneys' fees to defend the violative action and enforcing the stay. The court affirmed the damages in the form of attorneys' fees and emotional distress injury in the amount of $25,000.

58.     This case is nearly identical to *Fleet Mortgage*.  The creditor here, Messner, is attempting to continue a non-bankruptcy action against the Debtor and refused to stay the proceeding.  *See* Transcript at p. 4-5. The Debtor incurred fees associated with defending that violative action. *See* Affidavit of Ciesla. Messner has also contacted the Debtor on at least three (3) occasions, once in person, in his continuing attempts to further the state court action and his underlying claim. *See* Declaration of Jo Carlson.  These actions have caused the Debtor tremendous mental anguish and distress. *Id.*

59.     Specifically, the December 3 letter caused the Debtor extreme anxiety and apprehension.  *Id* at ¶¶ 7, 9, 11, 13-17.  The anxiety manifested as physical pain, including tightening of her chest, difficulty breathing, and upset stomach. *Id* at ¶¶ 7, 9, 11, 13.

60.     Due to the anxiety that the December 3 letter caused the Debtor she spoke with her doctor on or about December 5, 2012.  *Id* at ¶ 9.  She described the anxiety that the letter caused her and her doctor prescribed her Xanex at that time. *Id.* The Debtor was not on Xanex prior to receiving the December 3 letter from Messner. *Id* at ¶ 14. On December 6, 2012, the

Debtor filled her prescription to Xanex. *Id* at ¶ 9. Shortly after filling her prescription she was forced to take one pill to easy the anxiety caused by the December 3, 2012 letter. *Id.*

61.     Again on December 11 and December 12 of 2012, when Messner contacted the Debtor by phone and then in person, she felt extreme anxiety manifesting in physical pain including tightening of her chest, difficulty breathing, and upset stomach. *Id* at ¶¶ 11, 13.  The Debtor was again required to take her anti-anxiety medication – Xanex. *Id.*

62.     Now, each time the phone rings the Debtor's heart races with the anticipation that Messner will again be violating the stay and contacting her.  *Id* at ¶ 16.  This causes the Debtor continued anxiety and physical pain. *Id.*  Although the Debtor continuously suffers wondering when Messner will again violate the stay, she has been able to limit herself to only taking Xanex after the three occasions that Messner contacted her. *Id* at ¶ 14.

63.     The Debtor has suffered a heart attack in the past and has been prescribed nitroglycerin to keep her heart condition under control.  *Id* at ¶ 8.  If this is not enough, the Debtor now has to keep her anxiety caused by Messner's violative behavior under control with Xanex.  *Id*. The Debtor is at risk of suffer an additional heart attack caused by Messner's violative behavior, which puts her wellbeing and the wellbeing of her family at risk.  *Id* at ¶¶ 17-18.

64.     The Debtor here has demonstrated the kind of specific mental anguish and emotional distress that led the court to award $25,000 in damages in *Fleet Mortgage*, and the kind of emotional damages that the Seventh Circuit envisioned to supplement financial damages in *Aiello*.

### F.  Messner's Continuous Conduct in Violation of the Stay is Sufficiently Egregious to Warrant Punitive Sanctions.

65.     Section 362(k) allows punitive damages in appropriate circumstances, *i.e*.,

"egregious, intentional misconduct on the violator's part." *Young v. Repine (In re Repine)*, 536 F.3d 512, 521 (5th Cir. 2008); *Paloian v. Grupo Serla S.A. de C.V. (In re GGSI Liquidation, Inc.)*, 351 B.R. 529, 600 (Bankr. N.D. Ill. 2006). The purpose of punitive damages under § 362(k) is to punish for egregious conduct and deter any further violations. *See Paloian*, 355 B.R. at 702. In determining whether to award punitive damages the court must not only weigh the egregiousness of the conduct, but also the motive of the creditor, and any provocation by the debtor. *Id.*

66.     Messner's conduct here is sufficiently egregious, as stated at length above. And considering Messner's motive and the fact that the Debtor has done nothing to provoke the violations punitive damages are warranted. Messner is motivated by a tightly held belief that the Debtor is part of a scheme that involves individuals from all walks of life, all on a mission to destroy him and his livelihood. Messner has not, and will not, stop his harassment of the Debtor because he thinks his cause is just and the Debtor's is not. This is mere illusion. The Debtor has done nothing to further this illusion, but instead has moved away from Messner in an unsuccessful attempt to get away from his harassment. Thus, in order to deter any further violations of the stay, the Court should award punitive damages in the amount of $25,000.

## CONCLUSION

WHEREFORE, for the reasons stated above, the Debtor requests that this Court enter and order substantially in the form submitted herewith, (a) allowing the Debtor's Motion in excess of 15 pages, (b) awarding actual financial damages in the amount $8,715.00 in favor of the Debtor and against Messner, (c) awarding any additional fees incurred in prosecuting this Motion that are yet to be determined, (d) awarding actual emotional distress damages in the amount of $10,000, (e) awarding punitive damages in the amount of $25,000 in favor of the Debtor and against Messner, and (f) providing for any further relief that the Court deems just and proper.

- 20 -

Dated:  January 4, 2013                    Respectfully submitted,

                                           **Jo Anne Carlson**


                                           By: /s/ David P. Holtkamp
                                           One of Her Attorneys

William J. Factor (6205675)
Sara E. Lorber (6229740)
David P. Holtkamp (6298815)
**THE LAW OFFICE OF
     WILLIAM J. FACTOR, LTD.**
105 W. Madison Street, Suite 1500
Chicago, IL 60602
Tel:     (847) 239-7248
Fax:     (847) 574-8233
Email:  wfactor@wfactorlaw.com
          slorber@wfactorlaw.com
          dholtkamp@wfactorlaw.com